JOHN DONALD PORTER *v.* KATHLEEN
PATRICIA THRANE
(AC 26034)

Schaller, McLachlan and Pellegrino, Js.

Argued February 15—officially released November 7, 2006

*Ronald E. Kowalski II*, with whom was *Christopher C. Burdett*, for the appellant (plaintiff).

*Thomas M. Shanley*, with whom was *Robin C. Pepper*, for the appellee (defendant).

*Opinion*

McLACHLAN, J. The plaintiff, John Donald Porter, appeals from the judgment of the trial court dissolving the parties' marriage and issuing various related orders. He claims that the court improperly (1) admitted the testimony of Patrick A. LaBella, Jr., a real estate appraiser, and of the defendant, Kathleen Patricia Thrane, regarding the value of the plaintiff's property, (2) found that the plaintiff had spent more than $100,000 before the marriage for improvements to the plaintiff's property, and (3) granted the defendant two days of unlimited access to the marital home in order to remove certain items and prohibited the plaintiff's presence during the removal.[1] We agree with the plaintiff as to the first issue and reverse in part the judgment of the trial court.

The facts relevant to the issues on appeal are as follows. The parties were married on September 21, 1991, in Greenwich. The marriage broke down irretrievably and was dissolved on November 4, 2004. At trial, much of the testimony and evidence concerned the value of the marital residence (property) located at 290 Guinea Road in Stamford. The property consists of a main house and a cottage. The plaintiff testified that

---

[1] We will not address the second and third issues because they are not likely to occur on retrial.

he has been the sole owner of the property since he purchased it in 1988 and that he still resides there. The defendant testified that she does not own any real estate. The defendant and the parties' children[2] have resided at her mother's house on Deerfield Drive in Greenwich since the separation of the parties in November, 2001.

The plaintiff testified that immediately after he purchased the property in 1988 for $1,175,000, he spent approximately $200,000 to $300,000 on renovations. On cross-examination, counsel for the defendant referred to certain of the plaintiff's deposition testimony at which he estimated spending approximately $100,000 on renovations to the property. The plaintiff later explained that his deposition testimony covered a shorter time frame than the question he was asked at trial, and that if all of the improvements made in 1991 were included, then the total amount he invested in renovations before the marriage was approximately $200,000 to $300,000. The court found that the plaintiff had invested "more than $100,000" in renovations to the property.

The parties presented evidence as to the value of the property. The plaintiff testified that the value of the property was approximately $1,625,000. The defendant testified over objection that the fair market value of the property was $1,855,000. The defendant also presented LaBella, a certified residential appraiser, as a witness. LaBella testified, also over objection, that he prepared an appraisal update on March 19, 2004, of the main residence and the cottage on the property.[3] The appraisal updates were extensions of the original

---

[2] The parties had two children together.

[3] Another appraiser previously associated with LaBella's firm had done the original appraisal in June, 2002. The original appraisal was not admitted into evidence at the trial.

appraisal, which was done in June, 2002.[4] LaBella took various pieces of information from the original appraisal. LaBella also testified that he never inspected the interior *or* the exterior of the property. He did not look into whether the cottage had driveway access separate from the main house, and he was not aware of an overhead power line that went through the property. He also testified that no representative from his office performed an interior inspection of the property. The structures and much of the land were not visible from the roadway because of trees. LaBella's appraisal update valued the property at $1,855,000.

The court found that the value of the property was $1,855,000, the exact amount testified to by the defendant and LaBella, and it was subject to a mortgage of $690,000 for an equity value of $1,165,000. The court ordered that the plaintiff retain sole ownership of the property. In addition, the court ordered, as a lump sum property settlement, that the plaintiff execute a promissory note in favor of the defendant in the amount of $510,000 at zero percent interest. The money was payable on or before December 31, 2007, or upon the plaintiff's sale or transfer of ownership or refinance of the Stamford property at 290 Guinea Road and another property at 47 Ledgebrook Road, whichever shall occur sooner.

The plaintiff claims that the court improperly admitted into evidence both the testimony and appraisal updates from LaBella and the testimony of the defendant as to the value of the property. "Our standard of review for evidentiary matters allows the trial court great leeway in deciding the admissibility of evidence. The trial court has wide discretion in its rulings on

---

[4] The LaBella update states: "This update is an extension of the original appraisal report [of June, 2002] and should be relied on only by a reader who is familiar with the original appraisal report and any other prior updates."

evidence and its rulings will be reversed only if the court has abused its discretion or an injustice appears to have been done. . . . The exercise of such discretion is not to be disturbed unless it has been abused or the error is clear and involves a misconception of the law." (Internal quotation marks omitted.) *Bunting* v. *Bunting*, 60 Conn. App. 665, 670, 760 A.2d 989 (2000).

With respect to expert testimony, this court has observed that "[t]he trial court has wide discretion in ruling on the qualification of expert witnesses and the admissibility of their opinions. . . . The exercise of such discretion is not to be disturbed unless it has been abused or the error is clear and involves a misconception of the law." (Citations omitted; internal quotation marks omitted.) *State* v. *Sherman*, 38 Conn. App. 371, 407–408, 662 A.2d 767, cert. denied, 235 Conn. 905, 665 A.2d 905 (1995). Further, "[i]n order to render an expert opinion the witness must be qualified to do so and there must be a factual basis for the opinion." (Internal quotation marks omitted.) *State* v. *Douglas*, 203 Conn. 445, 452, 525 A.2d 101 (1987). An expert's uncertainties in the essential facts will make an opinion based on them without substantial value. See *Sears* v. *Curtis*, 147 Conn. 311, 314–15, 160 A.2d 742 (1960).

Here, LaBella did not have the essential facts necessary to form an opinion about the value of the property. He repeatedly testified that he did not inspect the property and that no one from his office had inspected the property since the initial appraisal in 2002. Furthermore, he did not view the house or the cottage on the property, even from a distance. He also lacked familiarity with the interior of the premises. His opinion on value was based on facts from an appraiser's report that had been prepared nearly two years earlier and which the court had excluded from evidence. The information on that appraiser's report was never verified because LaBella did not inspect the premises. LaBella's

testimony and appraisal updates were based on specula-
tion and lack of personal knowledge. He did not have
sufficient knowledge of the facts and therefore was not
qualified to offer an expert opinion on the value of
the property. We conclude that the court abused its
discretion by admitting LaBella's testimony and
appraisal updates into evidence.

Our Supreme Court has held that a party, although
having no qualification other than his ownership, is
competent to testify as to the value of his real property.
See *Lovejoy* v. *Darien*, 131 Conn. 533, 536, 41 A.2d 98
(1945); see also *Anderson* v. *Zweigbaum*, 150 Conn.
478, 483 n.1, 191 A.2d 133 (1963). Commentary to § 7-
1 of the Connecticut Code of Evidence acknowledges
this narrow exception to the general rule that lay wit-
nesses may not give expert opinions. Absent a proper
foundation and the establishment of reasonable qualifi-
cations, a witness who is not the owner of property is
not competent to testify as to its value. See *Urich* v.
*Fish*, 261 Conn. 575, 581–82, 804 A.2d 795 (2002).

Here, the defendant testified at trial as to the value
of the plaintiff's property. The court admitted this testi-
mony, reasoning that "the owner of the property has
intimate knowledge of the characteristics of the prop-
erty, the finances associated with the property, the con-
dition of the property and so forth. This witness [the
defendant] would appear to be in a similar situation."
Although we recognize that in some situations[5] a non-
owner may be competent to testify about the value of

[5] Our courts have allowed valuation testimony depending on the qualifica-
tions of the witness offering the testimony. In *O'Connor* v. *Dory Corp.*, 174
Conn. 65, 70, 381 A.2d 559 (1977), for example, the trial court allowed a
*former* owner of property to testify as to its value. The Supreme Court held
that his testimony properly was allowed and that the fact of his former
ownership pertained to the weight of the testimony rather than to its admissi-
bility. Similarly, in *Lovejoy* v. *Darien*, supra, 131 Conn. 536, the owner of
an oyster franchise was permitted to testify as to the value of his franchise.
In addition, his son, who did not own the bed, was also allowed to testify
as to its value. On the other hand, the court did not allow testimony as

property, none of those circumstances is present here, and we decline the defendant's urging that we extend this exception further to permit a nonowner, nonresident spouse to testify as to value of real property.[6] At the date of dissolution, the defendant had not lived at the property for almost three years.

"In the absence of any exceptional intervening circumstances occurring in the meantime, [the] date of the granting of the divorce would be the proper time as of which to determine the value of the estate of the parties upon which to base the division of property." (Internal quotation marks omitted.) *Sunbury* v. *Sunbury*, 216 Conn. 673, 676, 583 A.2d 636 (1990). The defendant, who was not the owner, was not qualified to testify as to the value of the property at the time of dissolution. Accordingly, we conclude that the court abused its discretion in admitting the defendant's testimony regarding the value of the property.

Nor can we find that the court's improper admission of the evidence of the value claimed by the defendant was harmless. "[T]he trial court has broad discretion in ruling on the admissibility [and relevancy] of evidence. . . . The trial court's ruling on evidentiary matters will be overturned only upon a showing of a clear abuse of the court's discretion. . . . Additionally, before a party is entitled to a new trial because of an erroneous evidentiary ruling, he or she has the burden of demonstrating that the error was harmful. . . . The

to value from a witness who had not worked on the ground for twenty-seven years.

[6] The defendant claims that she is an "equitable owner" of the property, and, therefore, she could testify as to value. The defendant does not cite any Connecticut authority that supports her assertion, nor could we find any such authority. "[U]nder Connecticut statute law neither husband nor wife acquires, by virtue of the marriage, any interest in the real or personal property of the other during that other's lifetime. General Statutes § 46-9 [now General Statutes §§ 46b-36 and 46b-37]." *Cherniack* v. *Home National Bank & Trust Co.*, 151 Conn. 367, 370, 198 A.2d 58 (1964).

harmless error standard in a civil case is whether the improper ruling would likely affect the result. . . . Furthermore, [i]t is well recognized that any error in the admission of evidence does not require reversal of the resulting judgment if the improperly admitted evidence is merely cumulative of other validly admitted testimony." (Citation omitted; internal quotation marks omitted.) *Tadros* v. *Tripodi*, 87 Conn. App. 321, 328, 866 A.2d 610 (2005). Here, the court found the value of the property to be the exact amount stated in the tainted evidence, and there was no other evidence to support that value.

The judgment is reversed as to the property and financial awards[7] only and the case is remanded for further proceedings consistent with this opinion.

In this opinion the other judges concurred.

---

[7] We note the relatively recent trend in Connecticut appellate decisions, when reversing a judgment of dissolution, to allow the dissolution to stand when the dissolution itself is not challenged. See *Greger* v. *Greger*, 22 Conn. App. 596, 600 n.3, 578 A.2d 162, cert. denied, 216 Conn. 820, 581 A.2d 1055 (1990). We have not reversed the dissolution in this case, although we recognize that change in marital status may affect a party's rights. That issue was not presented to us on appeal.